747 F.Supp. 1351 (1990)
Luther E. OLIVER and Mary E. Oliver, Plaintiffs,
v.
RESOLUTION TRUST CORPORATION, Receiver of Sooner Federal Savings and Loan Association, and Tandem Financial Corporation, Defendants.
No. 89-1929C(1).
United States District Court, E.D. Missouri, E.D.
October 1, 1990.
Thomas Blumenthal, Susman, Schermer, Rimmel & Shifrin, Clayton, Mo., for plaintiffs.
F. Rebecca Sapp, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
On October 16, 1989, plaintiffs brought this action against Sooner Federal Savings and Loan Association ("Sooner") and its wholly owned subsidiary, Tandem Financial Corporation ("Tandem"), making various claims concerning two financial agreements between the parties. Because on November 16, 1989, the Office of Thrift Supervision appointed Resolution Trust Corporation ("RTC") as the receiver of Sooner, RTC was substituted for Sooner as a party defendant by the Court's order of January 3, 1990. The matter is currently before the Court on the motion to dismiss of RTC and Tandem.
One of the two financial arrangements that are the subject of this action involved a refinancing of defaulted loans made by Sooner to a number of limited partnerships of which plaintiff Luther Oliver was general partner. In June, 1987, plaintiffs executed a $300,000.00 mortgage note secured by a deed of trust on plaintiffs' residence, *1352 payable to Sooner. The loan proceeds were applied toward the debts of the limited partnerships. Plaintiffs allege that this arrangement was proposed by Sooner and Tandem, and that plaintiffs agreed to it in reliance upon the representation that Sooner and Tandem would not seek repayment of the loan from plaintiffs personally but would look only to the partnerships for repayment.
The other arrangement involved O.R. Securities and O.R. Financial, two corporations of which Luther Oliver is the sole shareholder. In September, 1985, to enable O.R. Securities and O.R. Financial to purchase assets of certain other corporations, plaintiffs guaranteed loans of approximately $800,000.00, and put up matching funds of their own in the same amount, allegedly with the understanding that the loan would be converted into a 50% equity interest for Tandem in O.R. Securities and O.R. Financial, once Tandem secured the necessary federal approval for such investment. Plaintiffs allege that their personal guarantees were fraudulently induced by Sooner's and Tandem's representations that plaintiffs would not be held personally liable on their guarantees.
The complaint alleges that defendants have repeatedly threatened to foreclose on plaintiff's residence, which:
[has] caused Plaintiffs emotional distress and threatened the secured property by creating an incidence of default with the holder of the first and second deeds of trust on the Plaintiffs' residence, which in part precipitated the filing of Luther E. Oliver's bankruptcy proceeding.
The complaint further alleges that after Tandem failed to obtain the required federal approval for ownership in O.R. Securities and O.R. Financial, defendants began making demands upon plaintiffs for the repayment of the $800,000.00 advances, but have not returned the stock certificates they received as "a pledge for the `loans'."
Plaintiffs seek an injunction against any declaration of default by defendants and against foreclosure on their home, a declaratory judgment voiding the various instruments and agreements between the parties, an order directing the return of the O.R. Securities and O.R. Financial stock, $2 million damages for emotional distress, interest wrongfully paid and matching fund contributions, $2 million in punitive damages, and treble damages of $6 million under the RICO count.
Plaintiff's complaint contains six enumerated counts: Count I  Fraud, Count II  Promissory and Equitable Estoppel, Count III  Duress and Undue Influence, Count IV  Breach of Fiduciary Duty, Count VI[1]  Reformation of Contract, and Count VII  RICO.[2] Defendants have filed a motion to dismiss directed at all six counts. In their memorandum in opposition to the motion, plaintiffs seek leave to dismiss the RICO count without prejudice. The Court grants the request, and dismisses Count VII.
Defendants' motion relies chiefly on D'Oench, Duhme and Company, Inc. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), in which the Supreme Court quoted with approval a New York court's reasoning that:
"Public policy requires that a person who, for the accommodation of the bank executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced."
Id. at 459, 62 S.Ct. at 680, quoting Mount Vernon Trust Company v. Bergoff, 272 N.Y. 192, 5 N.E.2d 196, 197. Defendants also rely on 12 U.S.C. § 1821(d)(9)(A) and especially § 1823(e), which, as the Eighth Circuit has noted, "essentially codifies the D'Oench, Duhme doctrine." Firstsouth, F.A. v. Aqua Construction, Inc., 858 F.2d 441, 442 n. 2 (8th Cir.1988).
Referring to § 1823(e), 12 U.S.C. § 1821(d)(9)(A) provides:

*1353 Except as provided in subparagraph (B), any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the Corporation.[3]
Section 1823(e) provides:
No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement
(1) is in writing,
(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
(4) has been, continuously, from the time of its execution, an official record of the depository institution.
Three of the five remaining counts of plaintiffs' complaint, Count I for fraud, Count II for estoppel and Count VI for reformation of contract, arise entirely from Sooner's and Tandem's alleged misrepresentations and false promises concerning plaintiffs' personal liability on the mortgage and loan. The other two counts, Count III for duress and undue influence, and Count IV for breach of fiduciary duty, are based at least in part on Sooner's and Tandem's alleged agreement not to look to plaintiffs for repayment of the loans for which they signed. Such agreement falls within the scope of § 1823(e), i.e., it is an agreement that tends to diminish or defeat the interest of RTC in the mortgage and loan. By virtue of § 1821, then, this agreement cannot form the basis of or substantially comprise a claim against RTC, unless it meets the stringent criteria of § 1823(e).
Plaintiffs have not made any allegations meeting the § 1823(e) requirements concerning Sooner's and Tandem's alleged agreement to forego recourse to plaintiffs personally on the mortgage and loan. Plaintiffs' complaint refers to no writings memorializing this agreement. Instead, the complaint contains numerous references to misrepresentations, repeated promises and assurances  terms not generally associated with writings.
Plaintiffs admit that they have not indicated whether the agreement was made in writing or merely orally:
Yet in the case at bar there is no mention of whether the agreements between the parties were oral or written. The allegations are simply that there were agreements or representations ... The Plaintiffs are of the belief that there are written documents, including minutes of the Board and filings with the Security [sic] and Exchange Commission which evidenced the substance of the alleged agreements.
Memorandum in Opposition to Motion, p. 5. The documentation plaintiffs refer to, even were it found to exist, would not be sufficient. Section 1823(e)(2) plainly requires a writing executed by Sooner or Tandem and plaintiffs; had the necessary writing been executed, plaintiffs would obviously be aware of the fact and capable of alleging it specifically.
Plaintiffs, therefore, appear to be incapable of making an allegation necessary to the survival of their claims when pitted against defendants' affirmative defense. Contrary to plaintiffs' contentions, such an instance presents an appropriate basis for a Rule 12(b)(6) dismissal:
In a situation involving an affirmative defense, the claim is stated adequately, but in addition to the claim the complaint *1354 includes matters of avoidance that effectively vitiate the pleader's ability to recover on the claim ... [T]he complaint is said to have a built-in defense and is essentially self-defeating ... [P]laintiff's own allegations show that the defense exists ... [A] complaint showing that relief [is] barred by an affirmative defense [can] be dismissed under a Rule 12(b)(6) motion.
Wright & Miller, Federal Practice & Procedure: Civil 2d § 1357, pp. 350-51 (1990). The D'Oench, Duhme doctrine and § 1823(e) appear to bar much of the remainder of plaintiffs' complaint. Plaintiffs offer several arguments against the applicability of the doctrine and its codification.
First, plaintiffs argue that RTC's knowledge of plaintiff's claims at the time that RTC was appointed Sooner's receiver defeats RTC's use of the D'Oench, Duhme doctrine. In support of this argument, plaintiffs cite three cases,[4] none of which stands for the proposition plaintiffs assert. In each of the three cases, the FDIC's or FSLIC's knowledge was relevant only because the court was analyzing the various parties' rights and obligations under federal common law principles, after having earlier determined that § 1823(e) was inapplicable because the defenses raised by the obligors (fraud of a certain type,[5] failure of consideration and usury) did not involve "agreements" within the meaning of § 1823 and D'Oench, Duhme.[6] In the instant case, all of plaintiffs claims involve alleged misrepresentations of the agreement sort, as discussed above. That being the case, § 1823 clearly applies. The Supreme Court has expressly held that "knowledge of the misrepresentation by the FDIC prior to its acquisition of the note is not relevant to whether § 1823(e) applies." Langley v. FDIC, 484 U.S. 86, 94, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987).
In attempting to distinguish Langley from the instant case, plaintiffs argue that § 1823 applies only to banks and the FDIC, and not savings and loans and the FSLIC or its successor, RTC. The Court has earlier addressed this contention. See supra p. 1353, note 3. Even prior to the enactment of FIRREA and its explicit expansion of § 1823 to cover RTC and savings and loans, the Eighth Circuit had by analogy adopted for the FSLIC the protection afforded the FDIC under § 1823(e). First-south, 858 F.2d at 443.
Plaintiffs next contend that Tandem does not share with RTC the protection of D'Oench, Duhme and § 1823(e). On this point, the parties disagree as to the import of Astrup v. Midwest Federal Savings Bank, 886 F.2d 1057 (8th Cir.1989). Upon a careful reading of Astrup, this Court concludes that the Eighth Circuit there considered the D'Oench, Duhme doctrine to apply with equal force to the wholly-owned subsidiary ("Golden Pine") of a savings and loan association ("First Federal"). Whether or not the doctrine was the sole basis of the court's holding, the Eighth Circuit did clearly uphold the district court's grant of judgment notwithstanding the verdict in favor of the subsidiary Golden Pine against plaintiff Astrup, Golden Pine's co-venturer, saying:
The District Court properly granted judgment n.o.v. in favor of defendant Golden Pine on the contract claims. The *1355 D'Oench, Duhme doctrine precluded recovery by Astrup [against Golden Pine] on the basis of agreements which contradicted the records of First Federal.
Astrup, 886 F.2d at 1059.[7] Plaintiffs err in contending that the Eighth Circuit invoked D'Oench, Duhme only to justify judgment in favor of the parent savings and loan against the plaintiff; in fact, the Eighth Circuit did not discuss recovery against First Federal at all because the jury's verdict had been against Golden Pine alone.
This Court follows the lead of the Court of Appeals in applying the D'Oench, Duhme doctrine and § 1823(e) to Tandem, the wholly-owned subsidiary of the failed savings and loan, Sooner. The Court agrees with defendants that this furthers the policy behind the doctrine by expanding the protection of RTC, which as receiver of Sooner has succeeded to ownership of Tandem as one of Sooner's assets.
Next plaintiffs argue that D'Oench, Duhme does not bar their claims in Count IV for breach of fiduciary duty, citing Astrup, where the Eighth Circuit found that:
the District Court committed no error in upholding the $85,000 verdict against Golden Pine for breach of fiduciary duty toward its co-venturer Astrup. All parties concede that the law imposes a fiduciary duty on parties to a joint venture. Breach of such a duty sounds in tort rather than contract, and the District Judge rightly held that it would be an extension of D'Oench, Duhme to apply it to a tort claim.
Id. at 1059. Defendants respond that Astrup is distinguishable in that there "the fiduciary duty claim rested on an alleged conflict of interest and breach of loyalty which apparently did not implicate any alleged side agreements," whereas in the instant case "plaintiffs' breach of fiduciary duty count alleges that the side agreements themselves constituted undue influence in breach of a fiduciary duty." Reply Memorandum in Support of Motion, p. 8. Defendants further respond that no fiduciary relationship exists between a borrower and a lender under Missouri law, and that plaintiffs have not sufficiently pled any joint venture between the parties sufficient to establish a fiduciary relationship.
Paragraph 57 of the complaint sets forth the specific allegations supporting the breach of fiduciary duty claim:
57. Defendants have breached their fiduciary duties to Plaintiffs in the following respects:
(a) By making false representations ...;
(b) By conditioning any attempt to reassemble, recast or rearrange the Subject Limited Partnerships' indebtedness upon unreasonable and wrongful terms, including the condition that Plaintiffs sign the mortgage note and deed of trust, and the replacements ...;
(c) By using undue influence and coercion to induce Plaintiffs to sign the mortgage note, deed of trust, and the replacements ...;
(d) By using misrepresentations and unfair practices to induce Plaintiffs to sign the "loans" for O.R. Securities and O.R. Financial ...[;]
(e) By inducing Plaintiffs to sign notes for the purchase of selected assets of WZW Group, Inc. and Investor Insurance, Inc. with the promise the "loans" would be converted to an ownership position by Tandem....
Subsections (a), (d) and (e) are all based on the alleged side agreements between the parties. Because, as concluded above, the complaint fails to allege the existence of these agreements so as to satisfy the requirements of § 1823, these three claims are barred.
The claims described in subsection (b) and (c), both of which concern the mortgage note and the refinancing of the partnership debt, also fail to state a claim, though for a different reason. Although not based on any side agreement, these claims fail because plaintiffs' allegations do not support a finding of a fiduciary relationship *1356 between the parties concerning the refinancing of the partnership debt. The complaint contains no factual allegations whatsoever concerning that transaction indicating that defendants had any interest in the limited partnerships as a joint venture with plaintiffs, a joint venture being "an association of persons to carry out a single business enterprise for profit, for which purpose they combine property, effort, skill and knowledge." Sheridan v. McBaine, 660 S.W.2d 188, 194 (Mo.App.1983). The parties' relationship with respect to that transaction was merely that of lender and borrower, which, as defendants correctly point out, is not a relationship giving rise to fiduciary duty: "There is no confidential or fiduciary relationship between a bank and a customer borrowing funds." Centerre Bank of Kansas City v. Distributors, 705 S.W.2d 42 (Mo.App.1985).[8]
As for Count III, the alleged side agreement not to hold plaintiffs personally liable on the mortgage note figures prominently, but is not the sole basis for the claims there made for duress and undue influence. To the extent Count III is based on the alleged agreements, it is defeated by D'Oench, Duhme and § 1823. Another element of the claim is defendants' threat to "foreclose on the outstanding loans made to the Subject Limited Partnerships." Complaint, ¶ 46. D'Oench, Duhme and § 1823 aside, these threats do not support a claim for duress or undue influence.
Plaintiffs admit the delinquency of all the partnerships on their loans. Complaint, ¶ 13. A threat to foreclose on delinquent loans not being wrongful, plaintiffs fail to state a claim for coercion:
In order to claim duress in avoiding a contract a person must be so oppressed from the wrongful conduct of another as to deprive him of free will.
Schmalz v. Hardy Salt Co., 739 S.W.2d 765, 768 (Mo.App.1987) (emphasis added; citation omitted). Furthermore, defendants' knowledge of Luther Oliver's financial pressures (see complaint, ¶ 47), is irrelevant:
Financial necessity of a party, not caused by the other party to a contract, does not constitute duress.
Id.
Finally, no undue influence can be exercised where there does not exist a confidential or fiduciary relationship, absent extraordinary circumstances:
Undue influence stems from the confidential or fiduciary relation, but influence to be undue must arise to the mark of such over-persuasion, coercion, force or deception as breaks the will power of the person overinfluenced and puts in its stead the will of another.
Hedrick v. Hedrick, 350 Mo. 716, 168 S.W.2d 69, 74 (1943). The Court has earlier noted that plaintiffs have failed to plead facts supporting the existence of a fiduciary relationship between the parties concerning the partnership debt. In the absence of such a relationship between the parties, in view of the lack of specific factual allegations concerning "overpersuasion," and in view of the fact that plaintiff is a businessman involved in fairly sophisticated business dealings, the Court finds that a claim of undue influence is not viable.
Lastly, the Court considers plaintiffs' argument that D'Oench, Duhme and § 1823 are unconstitutional in that they allow an "impermissible taking without just compensation by the federal government" in violation of the due process clause. Plaintiffs readily admit that there is no case law in support of this argument, and in fact that they are aware of "no instance in which the D'Oench doctrine was subjected to constitutional scrutiny." Memorandum in Opposition, p. 11. Even as plaintiffs themselves frame the taking issue, citing Omnia Commercial Co. v. United States, 261 U.S. 502, 510, 43 S.Ct. 437, 438, 67 L.Ed. 773 (1923), "the question becomes whether or not the *1357 governmental action is a direct appropriation of property or merely a consequential loss or injury from some unrelated governmental action." Memorandum in Opposition, pp. 12-13. The Court deems the rather obvious answer to that question to be fatal to plaintiff's constitutional argument. The Court therefore does not address the argument further.
For the foregoing reasons, the Court grants defendants' motion to dismiss with respect to Counts I through VI, which are dismissed with prejudice. This action, coupled with plaintiffs' voluntary dismissal of Count VII, disposes of this matter in its entirety.
NOTES
[1] Plaintiffs have apparently inadvertently misnumbered the counts; the complaint contains no Count V.
[2] The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.
[3] Sections 1821 and 1823 are within Chapter 16 of Title 12, which concerns the FDIC. By virtue of the Financial Institutions Reform, Recovery & Enforcement Act of 1989 ("FIRREA"), however, RTC replaced the FSLIC and was expressly given the same "powers and rights to carry out its duties" with respect to savings and loans as the FDIC "has under ... 12 U.S.C.A. §§ 1821, 1822, and 1823." See 12 U.S.C. § 1441a(b)(4).
[4] Gunter v. Hutcheson, 674 F.2d 862 (11th Cir. 1982); FDIC v. Leach, 772 F.2d 1262 (6th Cir. 1985); and Sunbelt Savings Association of Texas v. Amrecorp Realty Corp., 730 F.Supp. 741 (N.D. Tex.1990).
[5] The Gunter court specifically noted that some types of fraud do involve agreements covered by § 1823(e), but the kind it was considering did not:

While certain of the alleged misrepresentations could be construed as "agreements" to perform certain acts in the future, such as deferring interest on the Gunters' notes, others clearly are not agreements of any sort. For example, the Gunters alleged that the chairman of the board ... fraudulently represented that the Hamilton banking system was in "sound financial condition." Gunter, 674 F.2d at 867.
[6] The authority of these cases even for the proposition for which they truly stand has been tarnished by Langley v. FDIC, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), in which the Supreme Court rejected the contention "that the word `agreement' in [§ 1823(e)] encompasses only an express promise to perform an act in the future." Id. at 90, 108 S.Ct. at 401.
[7] The Court of Appeals' summary of the district court's rationale indicates that it, too, was based on the application of the D'Oench, Duhme doctrine to protect Golden Pine. Id. at 1058-59, note 2.
[8] Because the Court finds that plaintiffs' fiduciary duty claim is in large part merely another guise for their claims concerning breach of the alleged side agreements rather than a tort claim with an independent basis, and that the remainder of the claim fails for lack of a fiduciary relationship, the Eighth Circuit's treatment of the fiduciary duty claim in Astrup is not controlling.