949 F.2d 818
 16 UCC Rep.Serv.2d 1097
 FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, et al., Plaintiffs,
Southwest Federal Savings Association and the Resolution
Trust Corporation as Receiver for Southwest
Savings Association, Plaintiffs-Appellees,
v.
Thomas S. MACKIE, Defendant-Appellant.
 No. 90-8355.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 6, 1992.
 
 Robert H. Renneker and Dan W. Shieder, Jr., Rosenfield, Mittenthal & Shieder, Dallas, Tex., for defendant-appellant.
 David L. Evans, Jeffrey H. Kobs, and Paul Powers, Hooper & Evans, Fort Worth, Tex., for plaintiffs-appellees.
 Appeal from the United States District Court for the Western District of Texas.
 Before WISDOM, KING, and JOLLY, Circuit Judges.
 E. GRADY JOLLY, Circuit Judge:
 
 
 1
 Lamar brought suit against Mackie in state court to enforce a promissory note. Lamar became insolvent and the FSLIC was appointed receiver. The FSLIC transferred all of Lamar's assets, including the note, to Southwest. The FSLIC removed the case to federal district court. The FSLIC was then dismissed from the case and Southwest moved for summary judgment. Mackie responded by asserting various affirmative defenses and counterclaims, including breach of the permanent loan commitment, breach of the duty to deal in good faith, fraud, and usury. The district court granted summary judgment in favor of Southwest, holding that all of Mackie's claims were answered adversely in FSLIC v. Locke, 718 F.Supp. 573 (W.D.Tex.1989).
 
 
 2
 Mackie appeals, arguing that the federal district court did not have jurisdiction over the case, that the federal district court did not have pendent party jurisdiction over the claims between Southwest and Mackie and that his defenses are not barred by the D'Oench, Duhme doctrine.
 
 
 3
 We hold that the district court did have removal jurisdiction over the case and that it had pendent party jurisdiction over the claims between Mackie and Southwest. We affirm the district court's order granting summary judgment on the ground that all of Mackie's defenses to the enforcement of the note are barred by the federal holder in due course doctrine.
 
 
 4
 * This case arises from a 1984 loan from Lamar Federal Savings ("Lamar") to Mackie to finance Mackie's acquisition and development of a tract of commercial real estate in Dallas County, Texas. On March 7, 1984, Lamar and Mackie entered into a Construction Loan Agreement. Pursuant to that agreement, Mackie gave Lamar a promissory note and a deed of trust on the property as security. Under the terms of the agreement, funds were to be advanced as construction progressed pursuant to a construction loan budget.
 
 
 5
 At approximately the same time, the parties entered into a separate Permanent Loan Commitment, which they were to close upon maturity of the construction loan. By agreement of the parties, the construction loan's maturity and the loan commitment's expiration were extended to July 31, 1986.
 
 
 6
 Under the terms of the note, Mackie was required to pay accrued interest on the note on the first day of each month. Failure to make these payments constituted a default under the note and entitled Lamar to accelerate the note's maturity. Mackie expressly waived notice of intent to accelerate.
 
 
 7
 One of the line-items on the construction loan budget was an interest reserve, out of which accrued interest on the loan was paid to Lamar. The FSLIC and Southwest Savings Association ("Southwest") allege that by February 1, 1986, the interest reserve had been exhausted and that Mackie failed to pay the interest directly. Mackie alleges that there was sufficient interest in the reserve after February 1, 1986, and that Lamar simply failed to make the required deductions to pay the interest after that date.
 
 
 8
 On July 14, 1986, Lamar, based upon Mackie's alleged failure to pay the accrued interest on the note from February 1, 1986 through July 1, 1986, declared the note to be in default, accelerated its maturity, and had the property seized for foreclosure.
 
 II
 
 9
 On July 29, 1986, Lamar filed this suit to enforce the promissory note in Texas state court. Mackie counterclaimed against Lamar, seeking money damages for breach of the loan commitment, breach of good faith and fair dealing, fraud, and violation of the Texas Deceptive Trade Practices Act.
 
 
 10
 On May 18, 1988, the Federal Home Land Bank Board ("FHLBB") declared Lamar insolvent and appointed the FSLIC as receiver. On that same day, the FSLIC transferred and assigned Lamar's assets to Southwest. Southwest, however, assumed no liability.
 
 
 11
 On May 20, 1988, Lamar filed an Amended Petition alleging that its assets had been transferred to Southwest. Also on May 20, 1988, Southwest and the FSLIC filed an amended petition and answer to Mackie's counterclaim. This pleading set out the facts of the receivership and the transfer of assets and sought relief against Mackie on behalf of Southwest and the FSLIC. After the filing of this state court pleading, the FSLIC removed the case to federal district court.
 
 
 12
 On November 22, 1988, the district court granted the FSLIC's motion to dismiss Mackie's claims against the FSLIC in accordance with North Mississippi Savings & Loan Association v. Hudspeth, 756 F.2d 1096 (5th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768.[1]
 
 
 13
 On September 14, 1989, Southwest filed a motion for summary judgment asserting that Mackie's claims against Southwest were barred by the federal holder in due course and the D'Oench, Duhme doctrines. Mackie filed a response on October 18, 1989, asserting that the federal court lacked jurisdiction and that his claims and defenses were not barred by the D'Oench, Duhme doctrine. On May 10, 1990, Mackie was granted leave to file an amended answer and counterclaim, in which he asserted his claims for offset based on breach of contract, breach of obligation to deal in good faith, violation of the Texas Deceptive Trade Practices Act and usury. On May 14, 1990, Mackie filed a motion for remand.
 
 
 14
 On May 31, 1990, the district court entered its judgment in this case awarding Southwest judgment against Mackie in the amount of approximately $7.5 million plus accrued interest of over $3.5 million. The court declared that the deed of trust created a valid and enforceable lien on Mackie's property, that Mackie was in default on the note, and that Southwest was entitled to foreclose on the property. In reaching its decision, the district court held that all of Mackie's claims had been decided adversely to him in FSLIC v. Locke, 718 F.Supp. 573 (W.D.Tex.1989). Mackie now appeals the district court's judgment.
 
 III
 
 15
 On appeal, Mackie argues that the case was improperly removed to federal district court. He also contends that the federal district court did not have pendant party jurisdiction over Southwest's claim against him. Mackie further argues that his claims and defenses against Southwest are not barred by the D'Oench, Duhme doctrine because they are based on written recorded agreements.
 
 
 16
 The FSLIC and Southwest contend that the federal district court did have jurisdiction, either under 12 U.S.C. § 1730(k)(1) or 12 U.S.C. § 1819(b)(2). They also argue that the district court had pendent party jurisdiction over the claims between Southwest and Mackie according to the Supreme Court's recent decision in Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). Finally, the appellees argue that Mackie's claims against them are barred by the federal holder in due course and D'Oench, Duhme doctrines.
 
 IV
 
 17
 * Mackie argues that federal jurisdiction does not exist under FIRREA because it was enacted long after the case was removed to federal court and the claims relating to the FSLIC had been dismissed.[2] Alternatively, Mackie argues that FIRREA does not provide a basis for jurisdiction of pre-1989 receiverships such as the one involving Lamar. Southwest contends that § 1819 extends federal jurisdiction to the case at hand. Because we hold that federal jurisdiction exists under § 1819, as amended by FIRREA, we do not address the issue of whether it also exists under § 1730(k)(1).
 
 
 18
 Mackie's jurisdictional argument is foreclosed by a recent opinion of this court in which we held that § 1819, as amended by FIRREA, applies to cases that were pending before its enactment.[3] In FSLIC v. Griffin, 935 F.2d 691, 695-96 (5th Cir.1991), we held that:
 
 
 19
 [a]mended § 1819 applies even though FIRREA became law after removal and even though FSLIC removed this case. Section 1819 applies retroactivity to cure any possible jurisdictional defect in either FSLIC's or FDIC's removal. Since FSLIC was a party at the time of removal and since § 1819 applies retroactively to cure any possible defects at the time of FSLIC's removal, § 1819 unmistakably confers federal jurisdiction in this case [internal citations omitted].
 
 
 20
 Griffin, 935 F.2d at 965-66. We have held that § 1819 applies retroactively in other cases as well. Sunbelt Savings, FSB v. Bent Trail Phase IV Joint Venture, 907 F.2d 1569, 1571 (5th Cir.1990); Triland Holdings & Co. v. Sunbelt Service Corp., 884 F.2d 205, 207 (5th Cir.1989).[4]
 
 
 21
 Mackie further argues that the FSLIC was dismissed as a party before the district court entered its judgment, and that therefore the district court did not have jurisdiction. In Griffin we held that the federal district court had jurisdiction despite the fact that the FSLIC had been dismissed before the district court entered its judgment:
 
 
 22
 The policy reasons for insuring federal jurisdiction over cases involving the actions of failed thrifts continue when the FDIC is voluntarily dismissed as a party and the owner of the failed thrifts assets remains. A transferee from FSLIC or FDIC, as successor of their interests, is still entitled to the protection of federal courts applying D'Oench, Duhme, even when FSLIC or FDIC is voluntarily dismissed. In sum, federal jurisdiction is proper in this case because according to repealed § 1730(k)(1) or amended § 1819, the case arises under federal law. Since federal question jurisdiction exists, federal law applies.
 
 
 23
 Griffin, 935 F.2d at 696.
 
 
 24
 It is thus clear that § 1819, as amended by FIRREA, grants removal jurisdiction to the federal district court in this case. The FSLIC was a party when the case was removed to federal court and the exception to § 1819 does not apply since the FSLIC was appointed receiver by the FHLBB, a federal agency. Also, the fact that the FSLIC was dismissed before the district court entered its final order does not negate federal jurisdiction.
 
 B
 
 25
 Mackie argues that even if the district court did have jurisdiction over the claims between the FSLIC and Mackie, there was no independent basis for asserting federal jurisdiction over the claims between Southwest and Mackie.[5] Southwest contends that the claims between Southwest and Mackie were properly removed to federal court along with the claims between the FSLIC and Mackie under the doctrine of pendent party jurisdiction. Mackie counters that there is no statutory basis to support pendent party jurisdiction as required by Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).[6] Southwest argues that § 1819 is broad enough to establish pendent party jurisdiction under Finley because it confers removal jurisdiction to the district court over any civil action, suit or proceeding to which the FDIC and FSLIC are parties. We agree. We hold that the district court did have pendent party jurisdiction over the claims between Mackie and Southwest pursuant to § 1819.
 
 
 26
 In Finley, the plaintiff brought a claim against the United States in district court under the Federal Tort Claims Act (FTCA). The district court allowed the plaintiff to amend her complaint to include claims against other defendants, as to which no independent basis for federal jurisdiction existed. The Supreme Court held that the district court did not have pendent party jurisdiction under the FTCA.
 
 
 27
 In arriving at its holding, the Court noted that pendent jurisdiction must satisfy the constitutional requirements, as set out in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), which requires that the claims arise from a common nucleus of operative facts and that a party would ordinarily be expected to try them together. Finley, 109 S.Ct. at 2007 (citing Gibbs, 383 U.S. at 725, 86 S.Ct. at 1138). The Court then stated that the posture of the case and the specific federal statute that confers jurisdiction must be examined. Finley, 109 S.Ct. at 2007. The Court examined the posture of the case in Finley and concluded that the added claims involved additional parties over which no independent basis for jurisdiction existed. Id. at 2008. Second, the Court found that the FTCA authorized federal courts to hear cases against the United States only. Id. at 2009.[7] The Court thus concluded that the district court did not have pendent party jurisdiction.[8]
 
 
 28
 The Court in Finley emphasized that resolution of the pendent party jurisdiction issue demands "careful attention to the relevant statutory language." Id. at 2007. In the light of Finley, this court has stated that pendent party jurisdiction does not exist unless the statute expressly provides for it or suggests that Congress intended to grant pendent party jurisdiction. Sarmiento v. Texas Bd. of Veterinary Medical Examiners, 939 F.2d 1242, 1247-48 n. 12 (5th Cir.1991). In two cases decided after Finley this court has held that a federal statute was broad enough to grant pendent party jurisdiction.
 
 
 29
 In Nolan v. Boeing Co., 919 F.2d 1058 (5th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991) the plaintiffs brought several personal injury suits in state court against Boeing arising out of a Boeing plane crash. Boeing obtained leave to file third-party demands for contribution and indemnity against SNECMA, a concern owned by the French government. SNECMA removed the actions to federal district court pursuant to 28 U.S.C. § 1441(d) and relevant provisions of the Foreign Sovereign Immunities Act of 1976 (FSIA).[9] This court held that the jurisdictional grant under the FSIA was much broader than the grant under the FTCA in Finley:
 
 
 30
 Unlike the FTCA, the FSIA grants jurisdiction to federal courts over "action[s]" and not just over "claims." This language is broad enough to extend federal court subject matter jurisdiction over the entire action in which the foreign state is a party, rather than simply over the "claims" in that action which are specifically asserted against the foreign state. As in Finley, the FSIA might be limited to claims brought "against a foreign state," but, unlike the FTCA, the FSIA allows the removal of "any civil action" against a foreign state.
 
 
 31
 Nolan, 919 F.2d at 1064. Therefore, this court held that § 1441(d) authorized SNECMA, as a third party defendant, to remove the entire action to federal court. Id. at 1066.
 
 
 32
 In Loeber v. Bay Tankers, Inc., 924 F.2d 1340 (5th Cir.1991), the plaintiffs brought an admiralty case against the defendant and then tried to amend their pleading to add another defendant for which there was no independent basis of federal jurisdiction. This court held that the admiralty statute conferring jurisdiction was much broader that the FTCA. "It confers admiralty jurisdiction over '[a]ny civil case of admiralty or maritime jurisdiction....' 28 U.S.C. § 1333(1). The admiralty statute does not limit jurisdiction to a particular party, as [does] the FTCA...." Loeber, 924 F.2d at 1346. This court further held that "case" and "action" refer to the same thing, i.e., the entirety of a civil proceeding. Id. at 1347. Accordingly, this court found that the district court did have pendent party jurisdiction. Id.
 
 
 33
 Clearly, the statute in the case at hand is also much broader than the FTCA provision addressed in Finley. Section 1819(b)(2)(B) provides that the FDIC can remove "any action, suit, or proceeding" to federal district court. As in Nolan and Loeber, the statute does not limit removal jurisdiction to claims against a particular party. We find that the statute provides removal jurisdiction for the entirety of the civil proceeding, and consequently, the district court properly asserted pendent party jurisdiction in this case.[10]
 
 C
 
 34
 (1)
 
 
 35
 We now turn to the district court's treatment of Southwest's motion for summary judgment and Mackie's defenses and counterclaims. The district court held that there was no factual dispute that Mackie defaulted on the note, and that therefore Southwest was entitled to summary judgment on its claims. In reaching its decision, the district court did not discuss any of Mackie's affirmative defenses or counterclaims; it simply stated that all of Mackie's claims were answered adversely to him in FSLIC v. Locke, 718 F.Supp. 573 (W.D.Tex.1989).
 
 
 36
 As affirmative defenses and counterclaims, Mackie asserted that Lamar had breached the loan commitment, breached its duty to deal in good faith, charged usury rates under the contract, committed common law fraud and violated the Texas Deceptive Trade Practices Act. Mackie cannot bring any counterclaims or claims for offset against Southwest because Southwest did not assume any of the FSLIC's liabilities; it only purchased the assets. Trigo v. FDIC, 847 F.2d 1499, 1503 (11th Cir.1988); Locke, 718 F.Supp. at 580.[11]
 
 
 37
 (2)
 
 
 38
 Mackie can, however, assert these claims as affirmative defenses to Southwest's action enforcing the note as long as Southwest is not a holder in due course.[12] The federal holder in due course doctrine bars makers of promissory notes from asserting various personal defenses against the FDIC, the FSLIC, and any transferees. Campbell Leasing Inc. v. FDIC, 901 F.2d 1244, 1248 (5th Cir.1990). The FDIC or FSLIC, however, must take the note in good faith and without actual knowledge of the defenses in order for the federal holder in due course doctrine to apply. FDIC v. Wood, 758 F.2d 156, 161 (6th Cir.1985), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286.
 
 
 39
 In its motion for summary judgment, Southwest asserted that Mackie's claims are barred by the federal holder in due course doctrine. Mackie responded by asserting that the federal holder in due course doctrine does not bar his defenses because the FSLIC was not a holder in due course under Texas law and because the FSLIC took the notes with knowledge of the defenses against Lamar.
 
 
 40
 Mackie alleges that Southwest is not a holder in due course under Texas law because both the FSLIC and Southwest acquired the note in a bulk transaction, not in the regular course of business.[13] However, in FSLIC v. Murray, 853 F.2d 1251, 1256 (5th Cir.1988), this court recognized the sensitive federal interests implicated when the FSLIC takes over an insolvent savings and loan and held that the FSLIC was a holder in due course despite the fact that it acquired the note at issue there in a bulk transaction. Therefore, in the case at hand, the FSLIC was, and Southwest is, a holder in due course entitled to protection from personal defenses even though the promissory note was acquired in a bulk transaction.
 
 
 41
 Mackie argues that summary judgment was inappropriate because there was a genuine issue of fact regarding the FSLIC's knowledge of Mackie's defenses against Lamar. Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.Rule Civ.P. 56(c). In Mackie's affidavit, he alleges that the FSLIC must have had actual knowledge of these claims and defenses against it because they were already the subject of pending litigation.
 
 
 42
 The Sixth Circuit Court of Appeals addressed a very similar issue in FDIC v. Wood, 758 F.2d 156 (6th Cir.1985). There the defendant, the executor of the note, asserted a usury defense against the FDIC, which was suing to enforce the note. The defendant argued that the FDIC should be charged with knowledge of the defense because information in the bank's files proved that the note was usurious. The court held that there was a presumption that the FDIC had no knowledge of any defenses against it. It further held that the defendant's assertion that the bank records should have put the FDIC on notice of the defense was not sufficient to overcome the presumption that the FDIC had no knowledge. Id. at 162.
 
 
 43
 In FDIC v. Armstrong, 784 F.2d 741 (6th Cir.1986), the Sixth Circuit addressed the same issue in the context of a district court's ruling on a summary judgment motion. There, the district court had granted summary judgment in favor of the FDIC, and on appeal, the maker of the note argued that summary judgment was inappropriate because there was a genuine issue of fact concerning the FDIC's knowledge of his defenses. The court held that the maker of the note had not produced even a scintilla of evidence of actual knowledge and that, therefore, summary judgment for the FDIC was appropriate under Fed.R.Civ.Pro. 56(c). Id. at 745.
 
 
 44
 In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), the Supreme Court held that a party opposing a motion for summary judgment must not only produce a scintilla of evidence in support of its case, it must produce evidence "upon which a jury could properly proceed to find a verdict for the party producing it." In Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), the Supreme Court held that a party opposing a motion for summary judgment must go beyond the pleadings and designate "specific facts showing there is a genuine issue for trial."
 
 
 45
 Therefore, in order to overcome the presumption that the FSLIC did not have actual knowledge, Mackie had to produce affirmative evidence that when the FSLIC acquired the note it had actual knowledge of Mackie's defenses. Mackie attempted to show actual knowledge based on a RICO suit between Lamar and some of its former officers. Mackie produced no evidence which suggested that the FSLIC had actual knowledge of the RICO suit or the pending litigation between Mackie and Lamar. Therefore, Mackie failed to present any evidence to overcome the presumption that the FSLIC lacked actual knowledge of any defenses and Southwest was entitled to summary judgment on the grounds that Mackie's personal defenses to the enforcement of the promissory note are barred by the federal holder in due course doctrine.[14]
 
 V
 
 46
 The district court did not address the issue of whether the federal holder in due course doctrine bars Mackie's claims and the issue is not discussed in Locke, upon which the district court relied. We can affirm the district court's order if there are any grounds in the record to support the judgment. Mangaroo v. Nelson, 864 F.2d 1202, 1204 n. 2 (5th Cir.1989); Watts v. Graves, 720 F.2d 1416, 1419 (5th Cir.1983). Therefore, on the grounds that Southwest was entitled to summary judgment because all of Mackie's defenses were barred by the federal holder in due course doctrine, the district court's order is
 
 
 47
 AFFIRMED.
 
 
 
 [1]
 Hudspeth was overruled by the United States Supreme Court in Coit Independent Joint Ventures v. FSLIC, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989). Mackie does not challenge the dismissal of these claims or request that they be reinstated
 
 
 [2]
 FIRREA became effective August 9, 1989
 
 
 [3]
 12 U.S.C. § 1819(b) provides:
 (2) Federal Court Jurisdiction.--
 (A) In General.--Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.
 (B) Removal.--Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court.
 (D) State Actions.--Except as provided in subparagraph (E), any action--
 (i) to which the Corporation, in the Corporation's capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;
 (ii) which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and
 (iii) in which only the interpretation of the law of such State is necessary, shall not be deemed to arise under the laws of the United States.
 
 
 [4]
 In his reply brief, Mackie argues that there is a gap in FIRREA, in that it substitutes the RTC as receiver for any receiverships created on or after January 1, 1989. FIRREA does not substitute any entity for the FSLIC in any capacity. Thus, Mackie argues that FIRREA does not extend federal jurisdiction to cases in which the FSLIC is a party. We hold, however, that despite this gap, FIRREA does apply retroactively to grant federal jurisdiction over cases in which the FSLIC is a party
 
 
 [5]
 Southwest and Mackie are both citizens of Texas, so there is no diversity jurisdiction
 
 
 [6]
 Mackie argues that Southwest was not a party at the time the case was removed to federal court. His argument has no merit. The FSLIC and Southwest made themselves parties to this suit by filing an amended petition and answer in state court prior to removal. The fact that the pleading was filed within seven days of the trial date without leave of court as required by Tex.R.Civ.P. 63 is irrelevant here. If a party fails to object to an amended pleading without leave, and the trial proceeds upon the amended pleading without objection, and final judgment is rendered thereon, the failure to secure leave is immaterial. Lee v. Key West Towers, Inc., 783 S.W.2d 586, 588 (Tex.1989). It follows that when the case is not tried within seven days, the failure to obtain leave is unimportant
 
 
 [7]
 The FTCA provides that "the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States" for certain torts of federal employees acting within the scope of their employment. 28 U.S.C. 1346(b)
 
 
 [8]
 Finley has been overruled by the Judicial Improvements Act of 1990, Pub.L. 101-650, 104 Stat. 5089 (1990). The Act, however, applies only to actions filed on or after December 1, 1990
 
 
 [9]
 Section 1441(d) states in pertinent part:
 Any civil action brought in a state court against a foreign state ... may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending.
 
 
 [10]
 Contra FDIC v. Israel, 739 F.Supp. 1411 (C.D.Cal.1990)
 
 
 [11]
 A setoff is justified only if the two claims or demands mutually exist between the same parties. FDIC v. Texarkana Nat'l Bank, 874 F.2d 264, 269 (5th Cir.1989)
 
 
 [12]
 At oral argument, Mackie conceded that he could only assert these claims if Southwest is not a holder in due course
 
 
 [13]
 Tex.Bus. & Com.Code Ann. § 3.302 provides that a holder cannot be a holder in due course if the instrument was acquired as part of a bulk transaction and not in the regular course of business
 
 
 [14]
 On appeal, Southwest also argued that Mackie's defenses are barred by the D'Oench, Duhme doctrine. In D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court held that a borrower cannot assert defenses against the FDIC that are based on unrecorded agreements with a failed bank. Because we affirm the district court's order on other grounds, we do not reach this issue