**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, et al., Plaintiffs,**

**Southwest Federal Savings Association and the Resolution Trust Corporation as Receiver for Southwest Savings Association, Plaintiffs–Appellees,**

v.

**Thomas S. MACKIE, Defendant–Appellant.**

**No. 90–8355.**

United States Court of Appeals, Fifth Circuit.

May 29, 1992.

Robert H. Renneker, Dan W. Shieder, Jr., Rosenfield, Mittenthal & Shieder, Dallas, Tex., for defendant-appellant.

David L. Evans, Jeffrey H. Kobs, Paul Powers, Hooper & Evans, Fort Worth, Tex., for plaintiffs-appellees.

ON PETITION FOR REHEARING

Before WISDOM, KING, and JOLLY, Circuit Judges.

**E. GRADY JOLLY, Circuit Judge:**

We withdraw our previous opinion, *FSLIC v. Mackie*, 949 F.2d 818 (5th Cir. 1992), and substitute the following opinion therefor. Substantively, only parts IV and V have been changed, but these changes result in a remand to the district court.

Lamar brought suit against Mackie in state court to enforce a promissory note. Lamar became insolvent and the FSLIC was appointed receiver. The FSLIC transferred all of Lamar's assets, including the note, to Southwest. The FSLIC removed the case to federal court. The FSLIC was then dismissed from the case and Southwest moved for summary judgment. Mackie responded by asserting various affirmative defenses and counterclaims, including breach of the permanent loan commitment, breach of the duty to deal in good faith, fraud, and usury. The district court granted summary judgment in favor of Southwest, holding that all of Mackie's claims were answered adversely in *FSLIC v. Locke*, 718 F.Supp. 573 (W.D.Tex.1989).

Mackie appeals, arguing that the federal district court did not have jurisdiction over the case, that the federal district court did not have pendent party jurisdiction over the claims between Southwest and Mackie and that his defenses are not barred by the *D'Oench, Duhme* doctrine.

We hold that the district court did have removal jurisdiction over the case and that it had pendent party jurisdiction over the claims between Mackie and Southwest. We further hold that only Mackie's fraud claim is clearly barred by *D'Oench, Duhme*. We remand Mackie's remaining claims to the district court to determine whether they are barred by the *D'Oench, Duhme* or federal holder in due course doctrines, and if they are not, whether they have merit.

## I

This case arises from a 1984 loan from Lamar Federal Savings ("Lamar") to Mackie to finance Mackie's acquisition and development of a tract of commercial real estate in Dallas County, Texas. On March 7, 1984, Lamar and Mackie entered into a Construction Loan Agreement. Pursuant to that agreement, Mackie gave Lamar a promissory note and a deed of trust on the property as security. Under the terms of the agreement, funds were to be advanced as construction progressed pursuant to a construction loan budget.

At approximately the same time, the parties entered into a separate Permanent Loan Commitment, which they were to close upon maturity of the construction loan. By agreement of the parties, the construction loan's maturity and the loan commitment's expiration were extended to July, 31, 1986.

Under the terms of the note, Mackie was required to pay accrued interest on the note on the first day of each month. Failure to make these payments constituted a default under the note and entitled Lamar to accelerate the note's maturity. Mackie expressly waived notice of intent to accelerate.

One of the line-items on the construction loan budget was an interest reserve, out of which accrued interest on the loan was paid to Lamar. The FSLIC and Southwest Savings Association ("Southwest") allege that by February 1, 1986, the interest reserve had been exhausted and that Mackie failed to pay the interest directly. Mackie alleges that there was sufficient interest in the reserve after February 1, 1986, and that Lamar simply failed to make the required deductions to pay the interest after that date.

On July 14, 1986, Lamar, based upon Mackie's alleged failure to pay the accrued interest on the note from February 1, 1986 through July 1, 1986, declared the note to be in default, accelerated its maturity, and had the property seized for foreclosure.

## II

On July 29, 1986, Lamar filed this suit to enforce the promissory note in Texas state court. Mackie counterclaimed against Lamar, seeking money damages for breach of the loan commitment, breach of good faith and fair dealing, fraud, and violation of the Texas Deceptive Trade Practices Act.

On May 18, 1988, the Federal Home Land Bank Board ("FHLBB") declared Lamar insolvent and appointed the FSLIC as receiver. On that same day, the FSLIC transferred and assigned Lamar's assets to Southwest. Southwest, however, assumed no liability.

On May 20, 1988, Lamar filed an Amended Petition alleging that its assets had been transferred to Southwest. Also on May 20, 1988, Southwest and the FSLIC filed an amended petition and answer to Mackie's counterclaim. This pleading set out the facts of the receivership and the transfer of assets and sought relief against Mackie on behalf of Southwest and the FSLIC. After the filing of this state court pleading, the FSLIC removed the case to federal district court.

On November 22, 1988, the district court granted the FSLIC's motion to dismiss Mackie's claims against the FSLIC in accordance with *North Mississippi Savings & Loan Association v. Hudspeth*, 756 F.2d 1096 (5th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768. Although *Hudspeth* was overruled by the United States Supreme Court in *Coit Independence Joint Ventures v. FSLIC*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), Mackie does not challenge the dismissal of these claims or request that they be reinstated.

On September 14, 1989, Southwest filed a motion for summary judgment asserting that Mackie's claims against Southwest were barred by the federal holder in due course and the *D'Oench, Duhme* doctrines. Mackie filed a response on October 18, 1989, asserting that the federal court lacked jurisdiction and that his claims and defenses were not barred by the *D'Oench, Duhme* doctrine. On May 10, 1990, Mackie was granted leave to file an amended answer and counterclaim, in which he asserted his claims for offset based on breach of contract, breach of obligation to deal in good faith, violation of the Texas Deceptive Trade Practices Act and usury. On May 14, 1990, Mackie filed a motion for remand.

On May 31, 1990, the district court entered its judgment in this case awarding Southwest judgment against Mackie in the amount of approximately $7.5 million plus accrued interest of over $3.5 million. The court declared that the deed of trust created a valid and enforceable lien on Mackie's property, that Mackie was in default on the note, and that Southwest was entitled to foreclose on the property. In reaching its decision, the district court held that all of Mackie's claims had been decided adversely to him in *FSLIC v. Locke*, 718 F.Supp. 573 (W.D.Tex.1989). Mackie now appeals the district court's judgment.

### III

On appeal, Mackie argues that the case was improperly removed to federal district court. He also contends that the federal district court did not have pendant party jurisdiction over Southwest's claim against him. Mackie further argues that his claims and defenses against Southwest are not barred by the *D'Oench, Duhme* doctrine because they are based on written recorded agreements.

The FSLIC and Southwest contend that the federal district court did have jurisdiction, either under 12 U.S.C. § 1730(k)(1) or 12 U.S.C. § 1819(b)(2). They also argue that the district court had pendent party jurisdiction over the claims between Southwest and Mackie pursuant to the Supreme Court's recent decision in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). Finally, the appellees argue that Mackie's claims against them are barred by the federal holder in due course and *D'Oench, Duhme* doctrines.

### IV

#### A

■ At the time the FSLIC removed this case, 12 U.S.C. § 1730(k)(1) was in effect. The statute has since been repealed by Section 407 of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA). Section 1730(k)(1) provided:

> Notwithstanding any other provision of law, (A) the Corporation shall be deemed an agency of the United States

within the meaning of section 451 of Title 28; (B) any civil action, suit, or proceeding to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and (C) the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district and division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect: *Provided,* That any action, suit, or proceeding to which the Corporation is a party in its capacity as conservator, receiver, or other legal custodian of an insured State–chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States. No attachment or execution shall be issued against the Corporation or its property before final judgment in any action, suit, or proceeding in any court of any State or of the United States or any territory, or any other court.

The statute thus granted federal district courts removal jurisdiction over cases to which the FSLIC was a party. The proviso only excepted from federal removal jurisdiction cases which: (1) involved only the rights or obligations of investors, creditors, stockholders, and a state-chartered institution in FSLIC receivership or conservatorship; and (2) involved only questions of state law. *FSLIC v. Griffin,* 935 F.2d 691, 695 (5th Cir.1991); *Davis v. FSLIC,* 879 F.2d 1288, 1289 (5th Cir.1989).

More than the rights or obligations of investors, creditors, stockholders and the FSLIC as receiver were involved in the case at the time of removal: Mackie's rights and obligations as a debtor were also involved. Therefore, the proviso did not apply and the district court had removal jurisdiction. The fact that the FSLIC was dismissed before the district court entered its final judgment does not negate federal removal jurisdiction.

### B

▬ Mackie argues that even if the district court did have jurisdiction over the claims between the FSLIC and Mackie, there was no independent basis for asserting federal jurisdiction over the claims between Southwest and Mackie. Southwest contends that the claims between Southwest and Mackie were removable to federal court under the doctrine of pendent party jurisdiction. Mackie counters that there is no statutory basis for pendent party jurisdiction as required by *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).[1] Southwest argues that § 1730(k)(1) is broad enough to establish pendent party jurisdiction under *Finley* because it confers removal jurisdiction to the district court over any action, suit or proceeding to which the FSLIC is a party. We agree. We hold that the district court did have pendent party jurisdiction over the claims between Mackie and Southwest pursuant to § 1730(k)(1).

In *Finley,* the plaintiff brought a claim against the United States in district court under the Federal Tort Claims Act (FTCA). The district court allowed the plaintiff to amend her complaint to include claims against other defendants, as to which no independent basis for federal jurisdiction existed. The Supreme Court held that the district court did not have pendent party jurisdiction under the FTCA.

---

1. Mackie also argues that Southwest was not a party at the time the case was removed to federal court. His argument has no merit. The FSLIC and Southwest became parties to this suit by filing an amended petition and answer in state court prior to removal. The fact that the pleading was filed within seven days of the trial date without leave of court as required by Tex. R.Civ.P. 63 is irrelevant here. If a party fails to object to an amended pleading without leave, and the trial proceeds upon the amended pleading without objection, and final judgment is rendered thereon, the failure to secure leave is immaterial. *Lee v. Key West Towers, Inc.,* 783 S.W.2d 586, 588 (Tex.1989). It follows that when the case is not tried within seven days, the failure to obtain leave is unimportant.

In arriving at its holding, the Court noted that pendent party jurisdiction must satisfy the constitutional requirements, as set out in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), which requires that the claims arise from a common nucleus of operative facts and that a party would ordinarily be expected to try them together. *Finley*, 109 S.Ct. at 2007 (citing *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138). The Court then stated that the posture of the case and the specific federal statute that confers jurisdiction must be examined. *Finley*, 109 S.Ct. at 2007. The Court examined the posture of the case in *Finley* and concluded that the added claims involved additional parties over which no independent basis for jurisdiction existed. *Id.* at 2008. Second, the Court found that the FTCA authorized federal courts to hear cases against the United States only. *Id.* at 2009.[2] The Court thus concluded that the district court did not have pendent party jurisdiction.[3]

The Court in *Finley* emphasized that resolution of the pendent party jurisdiction issue demands "careful attention to the relevant statutory language." *Id.* at 2007. In the light of *Finley*, this court has stated that pendent party jurisdiction does not exist unless the statute expressly provides for it or suggests that Congress intended to grant pendent party jurisdiction. *Sarmiento v. Texas Bd. of Veterinary Medical Examiners*, 939 F.2d 1242, 1247–48 n. 12 (5th Cir.1991). In two cases decided after *Finley* this court has held that a federal statute was broad enough to grant pendent party jurisdiction.

In *Nolan v. Boeing Co.*, 919 F.2d 1058 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1587, 113 L.Ed.2d 651, the plaintiffs brought several personal injury suits in state court against Boeing arising out of a Boeing plane crash. Boeing obtained

leave to file third-party demands for contribution and indemnity against SNECMA, a concern owned by the French government. SNECMA removed the actions to federal district court pursuant to 28 U.S.C. § 1441(d) and relevant provisions of the Foreign Sovereign Immunities Act of 1976 (FSIA).[4] This court held that the jurisdictional grant under the FSIA was much broader than the grant under the FTCA in *Finley:*

> Unlike the FTCA, the FSIA grants jurisdiction to federal courts over "action[s]" and not just over "claims." This language is broad enough to extend federal court subject matter jurisdiction over the entire action in which the foreign state is a party, rather than simply over the "claims" in that action which are specifically asserted against the foreign state. As in *Finley*, the FSIA might be limited to claims brought "against a foreign state," but, unlike the FTCA, the FSIA allows the removal of "any civil action" against a foreign state.

*Nolan*, 919 F.2d at 1064. Therefore, this court held that § 1441(d) authorized SNECMA, as a third party defendant, to remove the entire action to federal court. *Id.* at 1066.

In *Loeber v. Bay Tankers, Inc.*, 924 F.2d 1340 (5th Cir.1991), the plaintiffs brought an admiralty case against the defendant and then tried to amend their pleading to add another defendant for which there was no independent basis of federal jurisdiction. This court held that the admiralty statute conferring jurisdiction was much broader that the FTCA. "It confers admiralty jurisdiction over '[a]ny civil case of admiralty or maritime jurisdiction....' 28 U.S.C. § 1333(1). The admiralty statute does not limit jurisdiction to a particular party, as [does] the FTCA...." *Loeber*, 924 F.2d at

---

2. The FTCA confers jurisdiction over "civil actions *on claims* against the United States." 28 U.S.C. § 1346(b) (emphasis added).

3. *Finley* has been overruled by the Judicial Improvements Act of 1990, Pub.L. 101–650, 104 Stat. 5089 (1990). The Act, however, applies only to actions filed on or after December 1, 1990.

4. Section 1441(d) states in pertinent part:

> Any civil action brought in a state court against a foreign state ... may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending.

1346. This court further determined that "case" and "action" refer to the same thing, i.e., the entirety of a civil proceeding. *Id.* at 1347. Accordingly, we concluded that the district court did have pendent party jurisdiction. *Id.*

Clearly, the statute in the case at hand is also much broader that the FTCA provision addressed in *Finley.* Section 1730(k)(1) provides that the FDIC can remove any "action, suit, or proceeding" to federal district court. As in *Nolan* and *Loeber*, the statute does not limit removal jurisdiction to claims against a particular party. We hold that the statute provides removal jurisdiction for the entirety of the civil proceeding, and consequently, the district court properly asserted pendent party jurisdiction in this case.

### C

#### (1)

■ We now turn to the district court's treatment of Southwest's motion for summary judgment and Mackie's defenses and counterclaims. The district court held that there was no factual dispute that Mackie defaulted on the note, and that therefore Southwest was entitled to summary judgment on its claims. In reaching its decision, the district court did not discuss any of Mackie's affirmative defenses or counterclaims; it simply stated that all of Mackie's claims were answered adversely to him in *FSLIC v. Locke*, 718 F.Supp. 573 (W.D.Tex.1989).

As affirmative defenses and counterclaims, Mackie asserted that Lamar had breached the loan commitment, breached its duty to deal in good faith, charged usury rates under the contract, committed common law fraud and violated the Texas Deceptive Trade Practices Act. Mackie cannot bring any counterclaims or claims for offset against Southwest because Southwest did not assume any of the FSLIC's liabilities; it only purchased the assets. *Trigo v. FDIC*, 847 F.2d 1499, 1503 (11th Cir.1988); *Locke*, 718 F.Supp. at 580. Mackie can, however, assert these claims as affirmative defenses to Southwest's action enforcing the note.

#### (2)

We now turn to Mackie's defenses to determine if any of them have merit. As mentioned above, the district court did not address any of Mackie's defenses; it simply stated that all of his claims were answered adversely to him in *Locke.* In *Locke*, the court held that Locke's affirmative defenses were barred by the doctrine first established in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), that a borrower cannot assert defenses against the FDIC that are based on unrecorded agreements with a failed bank. *Id.* at 459–60, 62 S.Ct. at 680–681.

#### (a)

■ Mackie alleges that Lamar agreed to extend the time of the commitment with respect to the permanent loan and then fraudulently began foreclosure on the property despite this agreement. This alleged agreement is oral and unrecorded, and therefore Mackie's fraud defense is barred by *D'Oench, Duhme.*

#### (b)

■ Mackie's other defenses, however, are not necessarily barred by *D'Oench, Duhme* and were not directly discussed in *Locke.* Mackie alleges that Lamar breached the permanent loan commitment agreement and in doing so breached its duty to deal in good faith. Mackie also alleges that Lamar's failure to close the permanent loan and its posting the property for foreclosure constituted an unconscionable course of action in violation of the Texas Deceptive Trade Practices Act (TDTPA). In *Locke*, the court held that Locke's claims based on breach of fiduciary duty, bad faith and violation of the TDTPA were barred by the *D'Oench, Duhme* doctrine because all of these defenses were based on oral representations and promises made by the bank to Locke. *Locke*, 718 F.Supp. at 582. That is not the case here. We agree that Mackie cannot assert any defenses based on the alleged oral agreement

that Lamar would transfer funds allocated to other items of the construction budget to the interest reserve. He can, however, assert defenses that are based on obligations contained in the written Loan Agreement, as long as he does not rely on any unrecorded agreements to support his allegations. *FDIC v. Laguarta*, 939 F.2d 1231, 1239 (5th Cir.1991). Therefore, we remand Mackie's claims that Lamar breached the loan agreement, breached its duty of good faith, and violated the TDTPA to the district court.

### (c)

■ Finally, Mackie alleges that Lamar charged an interest rate above the legal maximum rate. He contends that the assignment of a net profits interest in the property from Mackie to Lamar constituted interest, which, when combined with the interest rate called for in the note, resulted in Lamar's charging an interest rate in excess of the maximum legal rate allowed under Texas law.

The *Locke* court did not dispose of this issue. The court held that such an assignment of profits was not usurious, and alternatively, that Locke could not maintain a usury claim against the FSLIC because that would violate federal law. *Locke*, 718 F.Supp. at 584. In reaching its decision that the assignment of profits was not usurious, the *Locke* court mischaracterized this court's decision in *In re Casbeer*, 793 F.2d 1436 (5th Cir.1986). In *Casbeer*, we found that the profits assignment at issue there was not usurious because it contained a savings clause stating that the amount received as profit assignments and the amount charged as interest would not exceed the maximum allowable interest rate. *Id.* at 1447 n. 30. We did not, as the *Locke* court suggested, hold that profit assignments do not constitute usury under Texas law. The *Locke* case, therefore, does not resolve whether Mackie has a valid usury defense. Further, Mackie's claim is not

against the FSLIC, as was Locke's. We therefore remand Mackie's usury claim for further consideration.

### (3)

■ In Mackie's petition for rehearing, he argues that Southwest is not entitled to federal holder in due course protection because the note at issue is non-negotiable.[5] He is correct in arguing that the federal holder in due course doctrine does not protect holders of non-negotiable notes. *Resolution Trust Corporation v. Montross*, 944 F.2d 227, 228 (5th Cir.1991) (en banc). The district court did not address this issue below. Clearly, the district court is in a better position to determine the negotiability of the note. We thus leave it to the district court on remand to determine whether Southwest is entitled to federal holder in due course protection.

### V

In conclusion, we hold that the district court did have removal jurisdiction under § 1730(k)(1). We further hold that the district court had pendent party jurisdiction over the claims between Mackie and Southwest. Finally, we hold that only Mackie's fraud claim is clearly barred by *D'Oench, Duhme*. We remand Mackie's claims that Lamar breached the loan commitment, breached its duty of good faith and violated the TDTPA. If the district court determines that these claims are not barred by the *D'Oench, Duhme* or federal holder in due course doctrines, it must determine whether they have merit. Additionally, we remand Mackie's claim that Lamar charged usurious rates because *Locke* does not resolve this issue. We AFFIRM the district court's order in part, REVERSE the district court's order in part, and REMAND for further consideration not inconsistent with this opinion.

---

5. Mackie argues that the note is non-negotiable because it incorporates the Loan Agreement and therefore is not an unconditional promise to pay a sum certain. Tex.Bus. & Comm.Code § 3.105(b)(1). Mackie also argues that Southwest, as the FSLIC's transferee, is not entitled to holder in due course status because the FSLIC acquired the note after it matured and therefore had notice that the note was subject to defenses. Tex.Bus. & Comm.Code § 3.302(a)(3).

AFFIRMED in Part, REVERSED in Part, and REMANDED.