**Odell ASTRUP, d/b/a Ace Investment Company, and individually, Appellant/Cross–Appellee,**

v.

**MIDWEST FEDERAL SAVINGS BANK and Federal Savings Bank successors in interest to First Federal Savings and Loan Association of Grand Forks, and Golden Pine Service Corporation, Inc., a wholly owned subsidiary of First Federal Savings and Loan Association of Grand Forks; respectively, Appellees/Cross–Appellants.**

Nos. 88–5222, 88–5223 ND.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1989.

Decided Oct. 5, 1989.

Rehearing and Rehearing En Banc Denied Nov. 24, 1989.

Robert Vogel, Grand Forks, N.D., for appellant/cross-appellee.

Wayne G. Popham, Minneapolis, Minn., for appellees/cross-appellants.

Before McMILLIAN and BOWMAN, Circuit Judges, and DUMBAULD * Senior District Judge.

DUMBAULD, Senior District Judge.

Hoping to profit from the need for housing following establishment of a coal gasification plant at Beulah, N.D., appellant Astrup entered on a joint venture for building a 36 unit condominium with Golden Pine Service Corporation (hereinafter Golden Pine) a wholly owned subsidiary of First Federal Savings and Loan Association (hereinafter First Federal). Because of the requirements of federal regulations, the parties engaged in various complicated transactions which will be subsequently discussed. The profitability of the venture was dissipated when the project was not accorded financing by First Federal at rates below the going market rate. Ultimately the District Court granted judgment n.o.v. for defendants on Astrup's contract claim but upheld a verdict for $85,000.00 on a claim for breach of fiduciary duty towards him by his co-venturer.[1] We affirm.

First Federal was prohibited by government regulations from engaging directly in real estate development, but held the construction mortgage on a 36 unit condominium project undertaken by the joint venture in which its subsidiary Golden Pine and Astrup participated. The notes and mortgage held by First Federal called for interest at the market rate of 18%. Financing provided by First Federal to purchasers of condominium units was also at market rates.[2]

---

* The Honorable Edward Dumbauld, United States Senior District Judge of the Western District of Pennsylvania, sitting by designation.

1. As a result of financial difficulties First Federal was merged into Midwest Federal, and the Federal Savings and Loan Insurance Corporation (hereinafter FSLIC) purchased all the stock of Golden Pine from First Federal, and agreed to defend and indemnify Midwest Federal for claims asserted against First Federal. The jury's verdict of February 20, 1988, was solely against Golden Pine. Golden Pine filed for bankruptcy on March 8, 1988. The bankruptcy court has lifted the automatic stay.

2. Astrup contends that Golden Pine was First Federal's *alter ego* (the jury found otherwise) and that First Federal was to provide financing both to the joint venture and to qualified condominium purchasers at favorable rates below the market. The District Court found that under

Government regulations also limited the amount of loans which an S. & L. could make to its subsidiary, and in September, 1982, Golden Pine needed to refinance through borrowing from First Federal an obligation to another financial institution which was falling due. Hence Golden Pine agreed to sell its interest in the joint venture to Astrup, and gave him a warranty deed, before he paid the stipulated price for Golden Pine's interest. Astrup assumed the entire loan from First Federal, but did not keep up payments on the mortgage. When Astrup could not sell units to the public, he sold ten units back to Golden Pine, which could be paid for only if Golden Pine assumed the mortgage to First Federal on those units. Golden Pine had leased the ten units to one Lummus with an option for six more units. The agreement for the ten units was made on February 1, 1983, and Astrup gave Golden Pine a deed for them, without knowing whether First Federal would permit Golden Pine to assume the mortgage debt. It did not.[3] On April 15, 1983, Astrup sold six more units to Golden Pine, Lummus having exercised his option.

When Astrup brought the instant action, Golden Pine brought a counterclaim to rescind the sale of the sixteen units.[4] In 1985 a settlement was reached in a foreclosure suit by First Federal in which Golden Pine (by then acquired by FSLIC) paid the mortgage interest attributable to the sixteen units and acquired unencumbered title. Astrup consented to foreclosure on the remaining twelve units, all parties reserving all rights to litigate all issues in the instant case. In this appeal Golden Pine asserts it should have received judgment n.o.v. on its counterclaim.

The parties have argued numerous points in their briefs, but only two issues are significant and need to be discussed here.

■ The District Court properly granted judgment n.o.v. in favor of defendant Golden Pine on the contract claims. The *D'Oench Duhme* doctrine precluded recovery by Astrup on the basis of agreements which contradicted the records of First Federal. Golden Pine's obligations under its agreement to assume the mortgage on the units purchased were satisfied by the settlement agreement in the foreclosure proceedings. In any event, Astrup failed to prove damages. It was lack of purchasers for the units offered for sale in the inactive real estate market, not Golden Pine's failure to assume the mortgage, that prevented Astrup from selling the condominium units.

■ Likewise the District Court committed no error in upholding the $85,000. verdict against Golden Pine for breach of fiduciary duty toward its co-venturer Astrup. All parties concede that the law imposes a fiduciary duty on parties to a joint venture towards other parties in the venture. Breach of such a duty sounds in tort rather than contract, and the District Judge rightly held that it would be an extension of *D'Oench Duhme* to apply it to a tort claim. The *D'Oench Duhme* doctrine simply forbids fabrication of fictitious assets for inclusion in the accounts receivable portfolio of regulated financial institutions tending to mislead and deceive bank examiners in their investigations to determine the financial condition of such institutions. That doctrine affords no protection against tort claims against a financial institution, whether for personal injuries to a motorist in a collision with an armored car bringing money to the S. & L. office, or for

the doctrine of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 457–59, 62 S.Ct. 676, 679–80, 86 L.Ed. 956 (1942) agreements contradicting the written records of the savings and loan institution and tending to mislead banking regulatory authorities are invalid. Hence judgment n.o.v. in favor of Golden Pine was granted on the contract claim.

**3.** The jury's verdict determined that the contract was not conditioned upon First Federal's assent.

**4.** Golden Pine contended that the sale was invalid by reason of conflict of interest or breach of loyalty on the part of Golden Pine's president (Lee Dunlevy) and its attorney (Ed Peterson) through their collusion with Astrup. Finding that the contracts of sale were valid, the jury did not return a verdict on Golden Pine's counterclaim.

insider profits in a sale of securities violating Securities and Exchange regulations, or for fraudulently entering into transactions involving discriminatory interest rates, such as the agreements alleged by plaintiff in the case at bar. The judgment of the District must be

AFFIRMED.