**RESOLUTION TRUST CORPORATION, as Conservator of Professional Federal Savings Bank, a Federal Savings Association, Plaintiff,**

**v.**

**JET STREAM, LTD., et al., Defendants/Counter– Plaintiffs,**

**v.**

**RESOLUTION TRUST CORPORATION, as Receiver of Professional Savings Bank, Counter–Defendant.**

No. 90–1436–CIV–T–21C.

United States District Court, M.D. Florida, Tampa Division.

April 8, 1992.

Edward Kuchinski, Holland & Knight, Tampa, Fla., for RESOLUTION TRUST CORPORATION, as Conservator of Professional Federal Savings Bank, plaintiff.

Scott A. Silver, Silver & Garvett, P.A., Coconut Grove, Fla., for defendants.

## ORDER

NIMMONS, District Judge.

THIS CAUSE comes on for consideration upon the Magistrate Judge's report and recommendation recommending that RTC's Motion To Dismiss Counterclaim (Dkt. 22) (interpolated as a motion for summary judgment) and RTC's Motion For Summary Judgment (Dkt. 43) be GRANTED and that judgment be entered in favor of plaintiff on all claims, including the counterclaims asserted by defendant, except that Defendants be granted leave to amend their counterclaims absent a showing by RTC of prejudice, and that Plaintiff's Motion To Hold Defendants In Contempt Of Court For Violation Of The Agreed Order On Verified Motion To Sequester Rents (Dkt. 33) be DENIED. All parties previously have been furnished copies of the report and recommendation and have been afforded an opportunity to file objections pursu-

ant to Section 636(b)(1), Title 28, United States Code.

Upon consideration, of the report and recommendation of the magistrate, all objections thereto timely filed by the parties and upon this court's independent examination of the file, it is determined that the magistrate's report and recommendation should be adopted.

Accordingly, it is now ORDERED:

(1) that the magistrate's report and recommendation is adopted and incorporated by reference in this order of the court;

(2) that RTC's Motion To Dismiss Counterclaim (Dkt. 22) (interpolated as a motion for summary judgment) and RTC's Motion For Summary Judgment (Dkt. 43) are GRANTED. The Clerk of Court shall enter judgment in favor of plaintiff on Counts I, II, III and IV of the complaint;

(3) that Defendants are granted leave to amend their counterclaims within twenty (20) days of the date of this order. Failure to amend the counterclaims within this time period shall result in dismissal of the counterclaims;

(4) that Plaintiff's Motion To Hold Defendants In Contempt Of Court For Violation Of The Agreed Order On Verified Motion To Sequester Rents (Dkt. 33) is DENIED.

DONE and ORDERED.

## REPORT AND RECOMMENDATION

JENKINS, United States Magistrate Judge.

THIS CAUSE comes on for consideration of RTC's Motion To Dismiss Counterclaim (Dkt. 22), Plaintiff's Motion To Hold Defendants In Contempt Of Court For Violation Of The Agreed Order On Verified Motion To Sequester Rents (Dkt. 33), and RTC's Motion For Summary Judgment. (Dkt. 43)[1] For the reasons set forth below, the Magistrate Judge recommends that the RTC's motion to dismiss and motion for

summary judgment be granted and RTC's motion to hold defendants in contempt of court be denied.

## I

In 1987, defendant Jet Stream, Ltd. ("Jet Stream") requested a loan from Professional Savings Bank ("Old Bank") for $3,250,-000 to construct a residential complex on property located in Polk County, Florida ("Thousand Roses project"). Jet Stream is a limited partnership with defendant Biscay Development Corporation ("Biscay") acting as its general partner. Defendant M. A. Grondin, as trustee, was to hold title to the property and give Old Bank a first mortgage for repayment of the loan.

On July 24, 1987, the loan was closed, and Jet Stream executed and delivered to Old Bank a promissory note in the amount of $3,250,000. (Dkt.3, Ex.B) To secure payment of the note, defendants also executed various loan documents in favor of the bank, including a mortgage and security agreement from defendant Grondin (Dkt.3, Ex.C), a Conditional Assignment of Leases and Rentals from Jet Stream which was executed by Biscay and defendant Grondin (Dkt.3, Ex.F), a security agreement from Jet Stream which was executed by defendant Grondin and Biscay and provided for a security interest in the rents generated by the property (Dkt.3, Ex.E)[2] and a Guaranty of Payment from defendant Grondin individually in favor of Old Bank. (Dkt.3, Ex.D) A Mortgage Extension Agreement dated January 24, 1989 extended the maturity date of the loan to February 14, 1990 and provided for fixed monthly payments of $22,050.45. (Dkt.3, Ex.I)

Old Bank was closed by the Office of Thrift Supervision (OTS) on July 26, 1990. A new bank created by OTS, Professional Federal Savings Bank (New Bank), acquired some of the assets and liabilities of the Old Bank. RTC was appointed conservator of the New Bank and presently holds the loan documents.

---

**1.** These matters have been referred to the undersigned by the District Judge for a report and recommendation. (Dkt. 55) *See* Local Rules 6.01(b) and 6.01(c), M.D.Fla.

**2.** The security agreement was perfected by filing UCC–1 financial statements in the public records of Polk County and with the Secretary of State. (Dkt. 3, Ex.G and H)

It is undisputed that defendants have failed to make any payments of principal and interest under the Note and Mortgage since August 14, 1989. (Pre–Trial Stipulation, Dkt. 59) Plaintiff's complaint requests foreclosure of the mortgage (Count I), judgment on the promissory note for damages in the sum of $2,188,306.33 plus interest, costs and attorney's fees (Count II), breach of guaranty by defendant Grondin personally for the same amount of damages (Count III) and foreclosure of the security interest (Count IV).

Defendants raise affirmative defenses of estoppel and failure to mitigate damages and assert counterclaims of breach of contract, negligence, gross negligence and breach of fiduciary duty. These affirmative defenses and counterclaims are based upon an alleged oral joint venture agreement by the bank to provide 100% financing for the Thousand Roses project.

Defendants state Jet Stream agreed to make the down payment to acquire the land, and the bank agreed to invest a comparable sum in addition to lending amounts for the balance of payment for acquisition of the land and construction. Defendants contend that the bank failed to provide the promised financing and, therefore, breached the joint venture agreement. Defendants' counterclaims for negligence, gross negligence and breach of fiduciary duty allege that the bank breached certain duties to defendants under the joint venture agreement regarding extension of financing and administration of the loan.

## II

RTC's motion to dismiss requests that the Court dismiss Defendants' counterclaims for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P. RTC states the counterclaims are based upon an alleged joint venture agreement to finance 100% of the Thousand Roses project, and claims based upon unwritten side agreements cannot be asserted against RTC pursuant to the *D'Oench* doctrine[3] and 12 U.S.C. § 1823(e), discussed *infra*.

RTC's motion for summary judgment requests that the Court enter judgment on RTC's complaint, since there is no dispute regarding the validity of the loan documents and Defendants' defenses are based upon an alleged joint venture agreement which is barred under the *D'Oench* doctrine, 12 U.S.C. § 1823(e) and the federal holder in due course doctrine. Therefore, RTC states there are no genuine issues of material fact, and RTC is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.

Defendants' responses to the motions contend that the affirmative defenses and counterclaims based upon the oral joint venture agreement are not barred by the doctrines asserted by the RTC. Defendants state an award of damages for the counterclaims would merely set-off any liability under the note and loan documents, and the counterclaims are, therefore, not defenses to payment of the note or other loan obligations. Defendants also argue that the agreement was not a "secret agreement" under these doctrines. (Dkts. 24, 47)

Under Federal Rule of Civil Procedure 12(b), where matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss "shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56". Rule 12(b), Fed.R.Civ.P.

In the instant case, the essence of both RTC's motion to dismiss and motion for summary judgment is that Defendants' defenses and counterclaims are based upon an alleged "secret" joint venture agreement between the Old Bank and Defendants which is barred under *D'Oench* and 12 U.S.C. § 1823(e). Defendants have, therefore, been afforded the opportunity in their responses to the motions and oral argument to establish that the oral joint venture agreement was not a secret agreement which would be precluded under

---

**3.** *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

these doctrines, as well as the federal holder in due course doctrine. Therefore, the court should treat the motion to dismiss as a motion for summary judgment pursuant to Rule 12(b) and should consider these motions together.

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the initial burden of coming forward with proof of the absence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). This burden may be satisfied by showing an absence of evidence to support the nonmoving party's case, where the nonmoving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

If the moving party comes forward with this proof, then the burden shifts to the party opposing the motion for summary judgment to "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Mere allegations of denial are insufficient to meet the burden of opposing summary judgment, and the party resisting summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, "(t)he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### III

*D'Oench Doctrine and*
*12 U.S.C. § 1823(e)*

In *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Federal Deposit Insurance Corporation ("FDIC") instituted an action to recover payment of a promissory note. The debtor claimed that a collateral agreement existed with the bank that the note would not be collected. *Id.* at 454, 62 S.Ct. at 678.

The Court held that the debtor could not rely upon an agreement which was not reflected in the bank's records to escape liability on the note because such an agreement would "deceive the creditors or the public authorities or would tend to have that effect." *Id.* at 460, 62 S.Ct. at 681. The Court stated it was irrelevant whether the debtor intended to deceive creditors; "(i)t would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which [FDIC] relied in insuring the bank was likely to be misled." *Id.* The Court reasoned that preventing a party from defending against liability on the basis of an agreement not contained in the bank's records was necessary in order to permit the FDIC to rely on the bank's records to regulate and protect the financial stability of the institution and to prevent impairment of the bank's capital resources. *Id.* at 457–58, 62 S.Ct. at 679–80.

The *D'Oench* doctrine has been codified at Section 1823(e) of Title 12, United States Code. Section 1823(e) provides:

No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be

reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e).

In *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Court interpreted section 1823(e) broadly to bar not only claims against the FDIC which were based upon the actual promises or agreements, but also claims which are based upon a bank's misrepresentations, warranties, or conditions to such agreements. The Court inferred that equitable considerations under the statute favored protecting the FDIC and others who relied upon the bank's records over the borrower who failed to protect himself by assuring that the agreement was properly recorded in the bank's records. *Id.* at 94–95, 108 S.Ct. at 402–03.

Although there is some difference in the scope of protection afforded by *D'Oench* and 12 U.S.C. § 1823(e),[4] both *D'Oench* and section 1823(e) are designed to protect the federal banking regulatory authority from unrecorded agreements which prevent the federal banking authorities from fulfilling their duties, and, therefore, courts have treated the two as interchangeable. *Federal Deposit Ins. Corp. v. McCullough*, 911 F.2d 593, 598 n. 4 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991) ("Because § 1823(e) is merely a codification of *D'Oench* and its progeny, defenses premised upon § 1823(e) are usually construed in tandem.") *See also Kilpatrick v. Riddle*, 907 F.2d 1523, 1526 n. 4 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991). Additionally, although *D'Oench* and section 1823(e) discuss only the FDIC, both have been applied to cases involving the Resolution Trust Corporation ("RTC"). *See e.g. Savers Federal Savings & Loan Assn. v. Amberley Huntsville, Ltd.*, 934 F.2d 1201 (11th Cir.1991).

In the instant case, Defendants' affirmative defenses and counterclaims are based upon an alleged oral joint venture agreement to finance 100% of the cost of the Thousand Roses project. Alleged oral agreements that a bank was functioning as a joint venturer or partner, rather than a lender, have been repeatedly rejected by the courts under *D'Oench* and section 1823(e) where that relationship was not reflected in the bank's records. *See Savers Federal Savings & Loan Assn. v. Amberley Huntsville, Ltd.*, 934 F.2d 1201, 1206–1207 (11th Cir.1991) (*D'Oench* doctrine and section 1823(e) barred defenses and arguments relating to duties owed by the bank as a partner where the existence of the partnership was not reflected in the loan documents); *Federal Sav. & Loan Ins. Corp. v. Two Rivers Associates, Inc.*, 880 F.2d 1267, 1271–1277 and n. 4 (11th Cir. 1989) (counterclaim for breach of fiduciary duty by a joint venturer was barred by *D'Oench* and section 1823(e)); *Chatham Ventures, Inc. v. Federal Deposit Ins. Corp.*, 651 F.2d 355, 362 (5th Cir. Unit B 1981), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982) (oral joint venture agreement could not be asserted against the FDIC under section 1823(e)); *Resolution Trust Corp. v. Wellington Development Group*, 761 F.Supp. 731, 735–738 (D.Colo.1991) (counterclaims based upon allegations that the bank was a partner, joint venturer, or had otherwise formed a special or fiduciary relationship were barred under *D'Oench*); *In re University Drive Professional Complex, Inc. v. Federal Deposit Ins. Corp.*, 101 B.R. 790, 795–798 (Bankr.S.D.Fla.1989) (*D'Oench* precluded debtor from alleging an oral modification of a loan agreement into a joint venture agreement); *Federal Sav. & Loan Ins. Corp. v. Wynward Pines, Inc.*, 708 F.Supp. 329, 330 (M.D.Fla. 1989) (noting that the *D'Oench* doctrine

---

**4.** "[T]he statute expands *D'Oench, Duhme* in that it applies to any agreement, whether or not it was 'secret,' and regardless of the maker's participation in a scheme. At the same time, however, the statute is narrower than *D'Oench* *Duhme* in that it applies only to agreements, and not to other defenses which the borrower might raise." (citations omitted) *Resolution Trust Corp. v. Wellington Development Group*, 761 F.Supp. 731 (D.Colo.1991).

had been extended to bar defenses based upon alleged agreements of joint ventures or continued financing).

The *Two Rivers* case is factually similar to the instant case. In *Two Rivers*, the debtor attempted to assert counterclaims for breach of contract, fraud and breach of fiduciary duty by a joint venturer, based upon an alleged oral agreement by the bank to finance 100% of a project. 880 F.2d at 1271 n. 4. The Eleventh Circuit held that the counterclaims were based upon a "secret agreement" and, therefore, were barred by *D'Oench. Id.* at 1277. Defendants in the instant case also base their affirmative defenses and counterclaims upon an alleged oral joint venture agreement relating to the degree of financing which the bank was required to provide.

Defendants argue that the case of *Astrup v. Midwest Federal Savings Bank*, 886 F.2d 1057 (8th Cir.1989) compels a different result. In *Astrup,* the debtor entered into a joint venture to build a condominium project with a wholly-owned subsidiary corporation of the bank. The debtor defaulted under the promissory notes and construction mortgage held by the bank.

The court granted summary judgment on a breach of contract claim under *D'Oench,* but upheld a verdict for damages on a claim against the subsidiary corporation for breach of a fiduciary duty arising from the joint venture. The court stated that this claim sounded in tort and was, therefore, not barred by *D'Oench. Id.* at 1058–1059.

Even assuming that *Astrup* is correct in refusing to extend *D'Oench* to bar a tort claim against a bank arising from a joint venture agreement, Defendants cannot avoid the *D'Oench* doctrine merely by characterizing the bank's financing as a "joint venture", rather than as the loan transaction which is reflected in the bank's records, and pleading this claim in tort as a counterclaim. This practice was implicitly rejected in *Two Rivers. See Two Rivers Associates, Inc.,* 880 F.2d at 1276–1277 and n. 4 (defendant was estopped from asserting counterclaims, including a counterclaim for breach of fiduciary duty by a joint venturer, which were based upon a "secret agreement" to fund the entire project).

*See also Mainland Sav. Assn. v. Riverfront Assoc., Ltd.,* 872 F.2d 955, 956 (10th Cir.) (*per curiam* ), *cert. denied,* 493 U.S. 890, 110 S.Ct. 235, 107 L.Ed.2d 186 (1989) (set-off claims asserting intentional fraud, gross negligence, reckless conduct, breach of an agreement to fund and breach of an implied covenant of fair dealing which were based upon the bank's alleged failure to provide additional funding were barred under *D'Oench* and section 1823(e)); *Federal Deposit Ins. Corp. v. Texas Country Living, Inc.,* 756 F.Supp. 984, 988–990 (E.D.Tex.1990) (counterclaims for negligence, breach of fiduciary relationship and negligent misrepresentations could not avoid application of the *D'Oench* doctrine merely because the claims were styled as affirmative claims, rather than as defenses to the enforcement of the loan obligation).

Moreover, the counterclaim in *Astrup* was asserted against the bank's subsidiary corporation, which was directly involved in the project. This type of relationship does not exist in the instant case.

In *Vernon v. Resolution Trust Corp.,* 907 F.2d 1101 (11th Cir.1990), the Eleventh Circuit noted that it had found only three types of situations where the *D'Oench* doctrine had failed to bar a defense raised by the debtor to resist enforcement of the debt instrument: (1) when the borrower was innocent of any intentional or negligent deception; (2) when the defense was manifest on the face of the document; and (3) when the borrower was the nonnegligent victim of fraud in the factum. *Id.* at 1106–1107 n. 4. None of these exists in the instant case.

The *Vernon* court refused, however, to bar the shareholders of a failed savings and loan institution from asserting claims for securities violations, racketeering, fraud and misrepresentation, despite the fact that these claims were not reflected in the documents of the institution, under the *D'Oench* doctrine. *Id.* at 1108. The court noted that certain claims, such as tort claims, might be valid even if they did not appear in the records of the failed bank. *Id.*

*Vernon* is distinguishable because that case involved claims which were asserted by the shareholders of the institution against the bank, not by a debtor. Moreover, even though *Vernon* recognized that valid tort claims could exist against the institution which would survive *D'Oench*, *Vernon* did not address the situation where the debtor essentially attempts to re-characterize a loan transaction as a "joint venture where the bank agreed to fully fund a project", contrary to the express terms of the loan documents, and enforce this alleged oral joint venture agreement against the RTC. This type of situation existed in *Two Rivers*, and the Eleventh Circuit held that counterclaims arising out of this alleged oral joint venture agreement to fully fund the project would be barred by *D'Oench*, as previously discussed. The instant case is directly analogous to *Two Rivers*.

Defendants have produced no records of the bank which reflect this oral joint venture agreement. The loan documents themselves reflect the existence of a traditional borrower/lender relationship and do not support Defendants' claim of an oral joint venture agreement. In fact, the promissory note states "(i)t is expressly understood and agreed that Holder shall never be construed for any purpose as a partner, joint venturer, co-principal, or associate of Maker ..." (Dkt. 3, Ex.B, p. 2).[5]

■ Under Florida law, whether or not there is a joint venture depends upon the existence of a community of interest in the performance of a common purpose, the right of the parties to control the project, a joint proprietary interest in the subject matter, the right to share in the profits and the duty to share in the losses. *Kislak v. Kreedian*, 95 So.2d 510 (Fla.1957). The loan documents do not reflect the existence of these factors.

The bank was not entitled to any profits from the property, absent default of the loan agreement. While the mortgage encumbered all rents derived from the property, the mortgage provided that Old Bank was entitled to collect rents from the property only in the event of default. (Dkt.3, Ex.C, Article 9) The Conditional Assignment of Leases and Rentals also provided for collection of the rents, profits and income generated by the property by the bank only in the event of default, as security for the loan. (Dkt. 3, Ex.F)

Additionally, the loan documents do not provide that the bank is liable for any of the debts, obligations or liabilities of the borrower. The Mortgage And Security Agreement states the mortgagor "will defend and hold Mortgagee harmless from any action, proceeding or claim affecting the Mortgaged Property, or the value of the Note or the Security Documents." (Dkt. 3, Ex.C, Article 4) Additionally, the loan documents do not suggest the existence of a common purpose or joint right of control of the financed project.

Absent the existence of such factors in the loan documents, the oral joint venture agreement is a "secret agreement" which is barred under *D'Oench* and section 1823(e). *See Federal Deposit Ins. Corp. v. Key Biscayne Dev. Assoc.*, 858 F.2d 670, 673 (11th Cir.1988) (defense that bank was a joint venturer failed where the loan documents expressly refuted this relationship and intervenor failed to show otherwise); *In re University Drive Professional Complex, Inc.*, 101 B.R. at 795–798 (defenses barred under *D'Oench* where the loan documents reflected the existence of a lender/borrower relationship and not a joint venture). Therefore, Defendant's affirmative defenses and counterclaims, which are based upon the existence of the alleged joint venture agreement, must fail under *D'Oench* and section 1823(e).

*Federal Holder In Due Course Doctrine*

■ The federal holder in due course doctrine bars all personal defenses on a note acquired by the FDIC in the execution

---

**5.** Even if Defendants produced other evidence outside the loan documents to demonstrate the existence of the oral joint venture agreement, it is doubtful that such parole evidence would be admissible under Florida law to vary the express terms of the loan documents. *See In re University Drive Professional Complex, Inc.*, 101 B.R. at 795.

of a purchase and assumption agreement for value, in good faith and without actual knowledge. *McCullough*, 911 F.2d at 602–604; *Gunter v. Hutcheson*, 674 F.2d 862, 873 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The doctrine will bar personal defenses regardless of whether or not the FDIC has satisfied the technical requirements of state law. *Campbell Leasing, Inc. v. Federal Deposit Ins. Corp.*, 901 F.2d 1244, 1249 (5th Cir.1990).

■ RTC claims that this doctrine applies in the instant case to bar all of the defenses asserted against the promissory note, since the defenses are personal ones. Defendants do not dispute that the defenses which they have asserted against the note are personal defenses. Defendants' sole contention is that since RTC acquired the note after this action was filed, RTC acquired the note "with knowledge", and the doctrine does not apply.

In *Federal Savings & Loan Ins. Corp. v. Mackie*, 949 F.2d 818 (5th Cir.1992), a successor in interest of the FSLIC moved for summary judgment on a promissory note and alleged that the debtor's claims were barred by the federal holder in due course doctrine. The debtor contended that FSLIC had knowledge of the claims and defenses asserted against the note because they were already the subject of pending litigation between the bank and the debtor when FSLIC acquired the note.

The Fifth Circuit held that there was a presumption that the FSLIC had no knowledge of the defenses when it acquired the note, and the debtor was required to produce affirmative evidence that the FSLIC had actual knowledge of the defenses in order to overcome this presumption. *Id.* at 825–826. Since the debtor had produced no evidence of actual knowledge, the court held that the personal defenses were barred by the doctrine. *Id.* at 826.

The instant case is analogous. Defendants have produced no evidence that RTC had actual knowledge of the claims and defenses asserted against the note when it acquired the note. Therefore, the federal holder in due course doctrine bars the assertion of these defenses and claims also.

## Leave To Amend

At oral argument, Defendants requested leave to amend their complaint in the event the Court determined that their defenses and counterclaims were barred by *D'Oench*. Defendants stated there were claims for negligence which were not articulated in the present pleadings which Defendants could assert against the bank and which did not arise out of the alleged oral joint venture agreement to fund the entire cost of the project.

After a case has been placed on the trial calendar, a party requires leave of court to amend a pleading, unless written consent is obtained from the other party. *See* Fed. R.Civ.P. 15(a). Rule 15(a) also provides that leave to amend shall be given freely when justice requires. *Id.*

■ Where it appears that an amended complaint might state a claim upon which relief can be granted, the district court should give the party the opportunity to amend his complaint, instead of dismissing it. *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991). This is true even where the plaintiff does not seek leave to amend until after the district judge renders final judgment. *Id.* at 1112. However, the district court would not abuse its discretion in refusing to permit an amendment where it would be futile or would prejudice the other party. *Abramson v. Gonzalez*, 949 F.2d 1567, 1581 (11th Cir.1992).

■ The instant case was removed to federal court by RTC in November 1990, so it has only been pending in federal court for a little over one year. Defendants have not previously requested leave to amend their counterclaims, and Defendants state they can assert claims for negligence which do not arise out of the secret oral joint venture agreement.

RTC has not made a showing that any prejudice would arise from permitting Defendants to amend their counterclaims to assert negligence claims which would not be barred by *D'Oench*. Absent such a

showing by RTC in the time for filing objections to this report and recommendation, Defendants' request for leave to amend should be granted.

## IV

■ RTC has also filed a motion to hold Defendants in contempt of court. RTC contends that Defendants have wilfully failed to comply with the provisions of the July 31, 1991 Agreed Order On Verified Motion Of The Plaintiff To Sequester Rents ("Agreed Order"). (Dkt. 30)

RTC states it stipulated to entry of the Agreed Order based upon Defendants' representations that Defendants would turn over $20,000 per month to RTC, and the monthly expenses would not exceed $4000–$5000. RTC further states that the Agreed Order does not permit actual payroll to exceed $2500 per month.

The essence of RTC's contempt motion is that Defendants have violated the terms of the Agreed Order by exceeding $2500 per month in payroll expenses and failing to turn over $20,000 per month to RTC. RTC also states it objects to alleged excessive monthly payroll expenses which are being made to defendant Biscay. (Dkt. 33)

Defendants state the Agreed Order required RTC to object to any expenses within ten days of receipt of the budget report. Since RTC did not object to any expenses, Defendants contend that they were permitted to pay their actual payroll expenses.

Paragraph 4 of the Agreed Order provides, in pertinent part:

The report shall also include a proposed monthly operating budget ("Operating Budget") for the next 12 months, detailing on a monthly basis the Rents to be generated by the Property and the expenses which the Borrower expects to have to incur to preserve the Property or to meet the Borrower's lawful obligations in connection therewith. ("Expenses") The Plaintiff shall have Ten (10) days from the date of service of the Report to file any objections it may have to any proposed Expenses listed in the Operating Budget. Until the time has run for the Plaintiff to lodge objections to the Operating Budget or if any objection thereto is timely filed by the Plaintiff, the Borrower shall not pay any Expenses without further order of Court; provided, however, that actual payroll may be paid in the sum not to exceed $2500 per month.

(Dkt. 30, Agreed Order, paragraph 4)

It appears that this order requires RTC to object to any questionable expenses within ten days after receiving the report. The $2500 payroll expense limit referred to by RTC applies during the ten day time period for filing objections, and continues after the ten day time period only if RTC has objected to any monthly expenses. Since RTC did not file objections within the ten day period, Defendants were not limited to payroll expenses of $2500.

RTC has not specified whether it is seeking a finding of civil or criminal contempt. However, it is not necessary for the Court to make that distinction, as neither is supported by the record.

At most, the record demonstrates that the provision in paragraph 4 of the Agreed Order is merely the subject of conflicting interpretations by the parties. Regardless of the correctness of either interpretation, RTC has failed to establish by clear and convincing evidence that Defendants even violated the Agreed Order, much less that they did so intentionally or willfully. Therefore, a finding of either civil or criminal contempt is unsupported by the record. *See United States v. Maynard*, 933 F.2d 918, 920 (11th Cir.1991) (willful disobedience of an order required to support a finding of criminal contempt); *United States v. Roberts*, 858 F.2d 698, 700–701 (11th Cir.1988) (the petitioner in a civil contempt proceeding has the burden of establishing by clear and convincing evidence that the party violated the court's order). The motion to hold defendants in contempt of court should, therefore, be denied.

The Magistrate Judge also notes that RTC has objected to certain monthly expenses which are being made to defendant Biscay. Defendants contend that these are actual payroll expenses, and RTC has not demonstrated otherwise. Therefore, the

objections to the monthly expenses should be denied without prejudice.

It is, therefore, RECOMMENDED:

(1) that RTC's Motion To Dismiss Counterclaim (Dkt. 22) (interpolated as a motion for summary judgment) and RTC's Motion For Summary Judgment (Dkt. 43) be GRANTED and that judgment be entered in favor of plaintiff on all claims, including the counterclaims asserted by defendant, except that Defendants be granted leave to amend their counterclaims absent a showing by RTC of prejudice;

(2) that Plaintiff's Motion To Hold Defendants In Contempt Of Court For Violation Of The Agreed Order On Verified Motion To Sequester Rents (Dkt. 33) be DENIED.

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).